2022 PA Super 192

| | | |
|---|---|---|
| IN RE: ESTATE OF COLEEN TOMCIK | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| APPEAL OF: JEFFREY TOMCIK | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 984 WDA 2021 |

Appeal from the Order Entered August 12, 2021
In the Court of Common Pleas of Washington County
Orphans' Court at No. 63-17-1553

BEFORE:   PANELLA, P.J., MURRAY, J., and COLINS, J.*

OPINION BY MURRAY, J.:                    **FILED:  November 15, 2022**

Jeffrey Tomcik (Appellant) appeals from the orphans' court's order clarifying prior orders, imposing sanctions, and directing Appellant to pay to the Estate of Colleen Tomcik (the Estate), the previously agreed-upon settlement or face further sanctions.  We affirm.  In addition, we award additional counsel fees and costs to the Estate due to Appellant's obdurate, dilatory and vexatious conduct.

**CASE HISTORY**

The orphans' court recited the underlying facts and procedural history as follows:

> Coleen S. Tomcik (hereinafter the "Decedent"), died testate on November 17, 2017, late of Peters Township, Washington County, Pennsylvania.  At the time of her death, the Decedent resided with her husband, [Appellant], whom she had married on October 31, 2014, and her two minor children from her prior

_____

* Retired Senior Judge assigned to the Superior Court.

marriage, R.W. and M.W. [(collectively, children)]. The Decedent's will was admitted to probate on December 7, 2017, naming her sister, Kelly Gaydos (hereinafter the "Executrix"), as her executrix, and testamentary letters were issued to her. By her will, the Decedent left all of her tangible property to her children, and left the residuary of her estate to be divided equally between her children and [Appellant].

Irrespective of the clear provisions of Decedent's will, shortly after her death, [Appellant] changed the locks to the residence and would not allow access to the personal tangible property of the Decedent to the Executrix, or the Decedent's children. This included the personal property belonging to the children, the Decedent's jewelry and the children's dog. On March 2, 2018, the Executrix filed a Petition to Compel [Appellant] to release the Decedent's personal property to the children in accordance with the Decedent's will. The court entered a preliminary order directing [Appellant] to show cause why he should not be required to release the Decedent's personal property and other personalty to the children and/or the Estate.

On March 29, 2018, the Executrix filed a Petition for Rule to Show Cause why [Appellant] should not be surcharged for violating his fiduciary duty under a Power of Attorney for the Decedent. This petition arose out of allegations that [Appellant], after securing the Decedent's Power of Attorney on October 22, 2017, abused his authority and changed the beneficiary designations of Decedent's retirement accounts, just prior to her death on November 17, 2017, removing Decedent's children as beneficiaries and making himself the sole beneficiary of the accounts. The court issued a preliminary order directing [Appellant] to appear and demonstrate why he should not be surcharged.

On April 18, 2018, the court ordered [Appellant] to grant the Decedent's children … access to [their former] residence at 227 Timberlake Drive[, Venetia, Pennsylvania,] to remove all tangible property that belonged to them or the Decedent remaining therein. [Appellant] was further ordered to prepare and file an accounting for his activities as Power of Attorney, which he filed on April 27, 2018. Thereafter, the Executrix filed her exceptions to the accounting on May 9, 2018.

\* \* \*

- 2 -

On June 17, 2019, during a pretrial conference, counsel for the parties informed the court that a settlement agreement [(settlement agreement)] had been reached regarding the assets of the [E]state. The terms of the agreement were placed on the record and the Executrix and [Appellant], while under oath and with counsel, acknowledged their acceptance of the terms. **The agreement provided**, *inter alia*, **that the Decedent's retirement accounts**[, discussed *infra*,] **would be split 50% to the children and 50% to** [**Appellant**]. The attorneys agreed to have the agreement formally drafted and submitted thereafter. On August 18, 2020, over one year later, the Executrix filed a Motion to Compel [Appellant] to comply with the settlement agreement of June 17, 2019, as well as a motion for sanctions. A hearing was held on October 8, 2020, to address the matter. At the conclusion of the hearing, the court ordered [Appellant] to facilitate the settlement agreement and provide documentation regarding Decedent's Highmark Retirement Plan and her Highmark Investment account [(collectively, the Highmark accounts).] Because [Appellant] had refused to provide the necessary documentation for these accounts, and because, as discovered later, [Appellant] had re-titled the [Highmark] accounts in his name, the Executrix could not facilitate the terms of the settlement agreement of June 17, 2019. The court further ordered that [Appellant] be sanctioned in the amount of $16,330 in attorney's fees for the Decedent as a result of his obdurate, dilatory and vexatious conduct and refusal to comply with the settlement agreement. No appeal was taken from this order.

On December 21, 2020, the court held a hearing to review [Appellant's] compliance with the order of October 8, 2020. At the conclusion of the hearing, the court ordered [Appellant's] counsel, Michael McCague, Esquire, to provide the necessary documentation for the various accounts so that information could be released to the Executrix to facilitate the settlement agreement.

On March 15, 2021, the court held a hearing to further review [Appellant's] compliance with the settlement agreement, at which time the court was informed that all necessary documentation had finally been released to the Executrix. [Appellant] was represented at this hearing by Attorney Todd Jordan, Esquire [(Mr. Jordan)]. The court further ordered that the settlement be facilitated within thirty (30) days and that

[Appellant] pay attorney's fees to the [E]state in the amount of $29,404, and warned [Appellant] that further sanctions could be levied should the settlement agreement not be facilitated. On April 21, 2021, the Executrix filed a Motion for Contempt and Sanctions as [Appellant] did not comply with the court's order and had not facilitated the settlement agreement. The court ordered that a contempt hearing be scheduled, which was eventually held on August 6, 2021.

On April 22, 2021, [Appellant] filed a notice of appeal from the order of March 15, 2021. [The Superior Court quashed the appeal. *See* Order, 11/8/21 (stating the order was "not an appealable contempt order because it made no present finding of contempt.").]

Orphans' Court Opinion, 3/4/22, at 1-5 (emphasis added; footnotes omitted).

On May 10, 2021, Appellant filed two separate motions to dismiss the Estate's objections with respect to Decedent's Highmark accounts: one motion claimed the Estate lacked standing, and the other claimed the orphans' court lacked subject matter jurisdiction (collectively, motions to dismiss). Appellant argued that because the Estate was not a named beneficiary on Decedent's retirement accounts, it "does not have standing to pursue the Exceptions as the Estate is not [an] aggrieved party." Motion to Dismiss for Lack of Standing, 5/10/21, ¶ 13. As to jurisdiction, Appellant argued the Highmark accounts are governed by the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C.A. § 1001 *et seq.*, which preempts state law. Motion to Dismiss for Lack of Jurisdiction, 5/10/21, ¶¶ 6-8. Appellant maintained that under ERISA, the surviving spouse is by law the named beneficiary of the account; thus, Appellant was the beneficiary of the Highmark accounts and the orphans' court lacked jurisdiction. *Id.* ¶¶ 9, 13.

The orphans' court denied Appellant's motions to dismiss in separate orders dated April 26, 2021 (April 2021 Orders).[1]  The wording of the April 2021 Orders is pertinent to this appeal.  The orphans' court explained it utilized the two proposed orders drafted and submitted to the court by Appellant's counsel.  N.T., 8/6/21, at 6.  The printed text reads:

> AND NOW, this 26th day of April, 2021, upon consideration of the motion to dismiss for lack of standing, it is hereby ORDERED that the Exceptions filed by the Estate ~~to the two (2) Highmark Accounts and the American Funds Account are dismissed for lack of standing.~~
>
> AND NOW, this 26th day of April, 2021, upon consideration of the motion to dismiss for lack of jurisdiction, it is hereby ORDERED that the Exceptions filed by the Estate to the two (2) Highmark Accounts are ~~dismissed as this Court lacks subject matter jurisdiction over those two (2) accounts as those accounts are governed by ERISA.~~

The orphans' court crossed out Appellant's proposed language by hand, and in both orders, above the stricken language, handwrote "DENIED."

The orphans' court and Appellant's counsel discussed the April 2021 Orders a few months later at the August 6, 2021 contempt hearing:

> MR. JORDAN:  … [T]he court … issued two orders on [Appellant's] Motion to Dismiss for Lack of Standing and Motion to Dismiss for Lack of Jurisdiction.  And this court denied the exceptions filed by the Estate.  So I think because of that, this matter is concluded.
>
> THE COURT:  You mean I **granted** the motion to dismiss?
>
> MR. JORDAN:  **In essence, you did, Your Honor**.  I have a copy.
>
> * * *

---

[1] The April 2021 Orders were filed on May 10, 2021.

THE COURT:  **I was denying [Appellant's] motions**, if that wasn't clear.  You had a proposed order dismissing for lack of standing.

MR. JORDAN:  It says that the exceptions filed by the estate are denied on both orders.

THE COURT:  Well, **that wasn't what I intended**.  You thought I was agreeing with you?

MR. JORDAN:  I did, Your Honor.

THE COURT:  Then why would I have scratched that [proposed language] out?

MR. JORDAN:  I don't know.  Maybe you thought it was superfluous.

THE COURT:  Wow.  That is so cute, Mr. Jordan.  I can't even believe it.

MR. JORDAN:  I'm not trying to be cute, Your Honor.  I'm reading what is in the order.

THE COURT:  That's the fair reading of that [order]?  What I wanted to do was — I was attempting to deny [Appellant's request for] dismissal.  If you don't understand that –

MR. JORDAN:  Well, I'm looking at what was written.  Normally if a motion is denied, I see it across the whole –

THE COURT:  … [I]f you think that's a fair interpretation, then I'm going to find you in contempt, too, Mr. Jordan.

MR. JORDAN:  I'm just making a legal argument based on the documents.

THE COURT:  That's not a legal argument.  You're … stating as a matter of fact that that's what happened.  I am really flabbergasted now, Mr. Jordan.  …

N.T., 8/6/21, at 5-7 (emphasis added).

The following week, the orphans' court issued the order from which Appellant appeals. The order states:

[I]t is hereby ORDERED, ADJUDGED, and DECREED that:

With respect to the Motion to Dismiss for Lack of Standing filed on behalf of [Appellant], the court hereby clarifies that its April 26, 2021, Order was intended to dismiss the Motion to Dismiss for Lack of Standing and not the exceptions filed by the Estate. To the extent that there was any ambiguity in the court's modification of the proposed order submitted on behalf of [Appellant], the court hereby clarifies that its April 26, 2021, Order was intended to deny [Appellant's] Motion to Dismiss for Lack of Standing.

With respect to the Motion to Dismiss for Lack of Jurisdiction filed on behalf of [Appellant], the court hereby clarifies that its April 26, 2021, Order was intended to dismiss the Motion to Dismiss for Lack of Jurisdiction, and not the exceptions filed by the Estate. To the extent that there was any ambiguity in the court's modification of the proposed order submitted on behalf of [Appellant], the court hereby clarifies that its April 26, 2021, Order was intended to deny [Appellant's] Motion to Dismiss for Lack of Jurisdiction.

With respect to the Petition for Contempt brought on behalf of the Estate, based on the testimony and exhibits herein, the court orders that [Appellant] is hereby found in contempt for his failure to appear today, for his failure to comply with the court's March 15, 2021, Order, and his failure to complete the settlement of this matter placed on record and agreed to by the parties on June 17, 2019.

The court orders that [Appellant] immediately pay $29,404 in attorney's fees as previously ordered by Order of March 15, 2021, with interest at an appropriate market rate. The court further finds that by his contempt today, [Appellant] shall pay an additional amount of attorney's fees to [the law firm that represents the Estate] in the amount of $19,478.85, as per the exhibit entered into the record this date.

The court further orders that [Appellant] shall complete the settlement as placed on the record without any deductions for

taxes to the children[,] and shall pay on or before August 27, 2021, or suffer additional sanctions. [Appellant] shall appear at 1:00 p.m., on August 27, 2021, before the [orphans' court] and show proof of his compliance with this Order. Upon his failure to comply, [Appellant] shall be detained and shall be subject to a $100 per day penalty until he is willing to comply.

Pursuant to the settlement of June 17, 2019, [Appellant] … shall pay 50 percent of the following to the children of [Decedent], from that account or its cash equivalent:

The Highmark 401(k) Fund, having a December 31, 2020, value of $700,209.67;

The Highmark Pension Fund, having a June 30, 2021, value of $133,429.41; and

The American Funds account, having a June 30, 2021, value of $181,860.89.

This shall be paid on or before August 27, 2021, or the Court will impose the sanctions set forth in this Order.

Order, 8/12/21, at 1-2 (unnumbered).

Appellant timely filed a notice of appeal on August 20, 2021.[2] That same day, Appellant filed a motion for reconsideration and separate motion to stay the August 12, 2021 order. Appellant claimed the order should be vacated because the orphans' court lacked jurisdiction to make a substantive change to the April 2021 Orders. In the alternative, Appellant argued the settlement agreement was void due to mutual mistake of an essential term, *i.e.*, payment of the income taxes on the Decedent's retirement accounts. The orphans'

---

[2] Appellant and the orphans' court have complied with Pa.R.A.P. 1925.

court held a hearing on August 27, 2021, and subsequently denied both of Appellant's motions.

## ISSUES

On appeal, Appellant presents the following nine questions for review:

A. Whether the [c]ourt Orders of April 26, 2021, end the matter as the exceptions filed by the Estate were denied by the trial court in response to a Motion to Dismiss for Lack of Standing and a Motion to Dismiss for Lack of Subject Matter Jurisdiction?

B. Whether the trial court had jurisdiction to clarify the April 26, 2021 Orders more than 30 days after their entry on the docket[,] at which time they were final orders?

C. Whether the trial court can make a substantive change to the orders dated April 26, 2021, when they had become final orders?

D. Whether the trial court should have held an evidentiary hearing as to the terms of a disputed settlement agreement?

E. Whether the trial court denied [Appellant] due process by determining the terms of the settlement without a hearing?

F. Whether the settlement agreement is void as to mutual mistake when there are no provisions in the agreement for income taxes?

G. Whether the settlement agreement provides for [Appellant] to receive half of the retirement accounts and the children of [Decedent] to receive half of the retirement accounts and whom is to pay the income tax?

H. Whether the trial court followed the proper procedural requirements before determining sanctions against [Appellant]?

I. Whether the trial court denied [Appellant] due process by sanctioning him when there was no hearing or determination as to his willfulness to comply with the settlement?

Appellant's Brief at 9-10.

Preliminarily, we address Appellant's noncompliance with Pa.R.A.P. 2119(a), which requires the argument section of an appellate brief

> be divided into as many parts as there are questions to be argued; and shall have at the head of each part - in distinctive type … the particular point treated therein, followed by such discussion and citation of authorities as are deemed pertinent.

*Id.* Appellant's argument sections do not correspond to the nine issues he presents in his statement of questions. The Estate has objected to the defect, stating it "could substantially hamper this Court's ability to provide effective and meaningful review, and it unfairly affects the Estate's ability to respond appropriately." Estate's Brief at 12. We agree. The defect has hampered our review, and we thus could find waiver. *See Lackner v. Glosser*, 892 A.2d 21, 29 (Pa. Super. 2006) ("Appellate arguments which fail to adhere to [the Pennsylvania Rules of Appellate Procedure] may be considered waived"); *cf. Donahue v. Fed. Express Corp.*, 753 A.2d 238, 241 n.3 (Pa. Super. 2000) (declining to find waiver for a Rule 2119(a) violation that did not hamper review), and Pa.R.A.P. 105(a) (requiring liberal construction of appellate rules). Nevertheless, we will not find waiver.

For ease of disposition, we have organized Appellant's issues into the following five claims of error:

1. Whether the Estate lacks standing to sue? *See* Appellant's Brief at 22-23; Appellant's Reply Brief at 10.

2. Whether the orphans' court lacks subject matter jurisdiction? *See* Appellant's Brief at 20-22; Appellant's Reply Brief at 11.

3. Whether the orphans' court lacked jurisdiction to clarify its final April 2021 Orders more than 30 days after their entry?  *See* Appellant's Brief at 18-20; Appellant's Reply Brief at 7-9.

4. Whether the orphans' court improperly failed to find that the terms of the settlement agreement were ambiguous and lacking an essential term?  *See* Appellant's Brief at 23-28; Appellant's Reply Brief at 12-15.

5. Whether the orphans' court improperly imposed sanctions against Appellant?  *See* Appellant's Brief at 29-32; Appellant's Reply Brief at 15-18.

Appellant claims the Estate lacks standing because it is not an aggrieved party.  *See* Appellant's Brief at 22-23.  Appellant contends the Estate "is pursuing non-probate assets. … The Estate cannot bring an action on behalf of beneficiaries of the Estate if the money is never paid to the Estate." Appellant's Reply Brief at 10.

Appellant did not raise the issue of the Estate's alleged lack of standing in his statement of questions involved, nor is the standing issue fairly suggested by Appellant's statement of questions.  "No question will be considered unless it is stated in the statement of questions involved or is fairly suggested thereby."  Pa.R.A.P. 2116(a).  Accordingly, Appellant waived his challenge to the Estate's standing.  *See In re R.A.M.N.*, 230 A.3d 423, 431 (Pa. Super. 2020) (finding waiver under Rule 2116(a) where appellant argued issue but did not present it in the statement of questions).  The standing issue is also waived because Appellant failed to include it in his court-ordered Pa.R.A.P. 1925(b) statement.  *See U.S. Bank, N.A. v. Hua*, 193 A.3d 994,

997 (Pa. Super. 2018) ("Any issues not raised in a 1925(b) statement will be deemed waived." (citation omitted)).

Next, Appellant argues the orphans' court improperly denied his motion to dismiss for lack of subject matter jurisdiction.[3]  **See** Appellant's Brief at 20-22.  Appellant states: "As to the ERISA accounts, [*i.e.*, the Highmark accounts, Appellant,] as the [Decedent's] surviving spouse, was automatically the beneficiary unless [he] signed a waiver, which he did not.  29 U.S.C. [§] 1055(c)(2)."  Appellant's Reply Brief at 11; **see also** Appellant's Brief at 21-22 ("[Appellant], as [Decedent's] surviving spouse, is [Decedent's] sole beneficiary pursuant to the terms of the Plan.").  Appellant contends that "by federal law[, Appellant] is entitled to the Highmark accounts and ERISA preempts any state law to the contrary[,] depriving the [orphans'] court of subject matter jurisdiction."  Appellant's Brief at 22.

The Estate counters that "Appellant's contrived argument related to federal preemption ignores the fact that Appellant had already liquidated and changed the characterization of [the Highmark] accounts before offering to split them with Decedent's children."  Estate's Brief at 19.  The Estate adds:

> At the pretrial conference on June 17, 2019, Appellant submitted to the continuing jurisdiction of the Washington County Court of Common Pleas and agreed to split certain assets with Decedent's

_____

[3] Although Appellant did not raise this issue in either his Rule 1925(b) statement or statement of questions, it cannot be waived.  **Commonwealth v. Little**, 314 A.2d 270, 272 (Pa. 1974) ("An objection to lack of subject-matter jurisdiction can never be waived; it may be raised at any stage in the proceedings by the parties or by a court on its own motion.").

children. **It was expressly acknowledged on the record that certain assets were from ERISA accounts and Appellant willingly agreed to incorporate them into the Settlement.** Shortly after the Settlement, Appellant liquidated all of the accounts and converted them into accounts in his own name, beyond the regulative reach of ERISA.

*Id.* at 19-20 (emphasis in original; record citations omitted); *see also id.* at 21 ("In relying generally upon the mechanisms of spousal transfers under ERISA law, Appellant utterly disregards that he consented to the [orphans'] court's jurisdiction when he entered in the [s]ettlement [agreement].").

As subject matter jurisdiction raises a question of law, our standard of review is *de novo* and scope of review is plenary. ***Strasburg Scooters, LLC v. Strasburg Rail Rd., Inc.***, 210 A.3d 1064, 1068 (Pa. Super. 2019). "[S]ubject matter jurisdiction has been defined as the court's power to hear cases of the class to which the case at issue belongs." ***Verholek v. Verholek***, 741 A.2d 792, 798 (Pa. Super. 1999).

Instantly, the record provides ample support for the Estate's argument, which we find persuasive. ***See*** N.T., 6/17/19, at 30 (both parties' counsel agreeing the Highmark "assets are an ERISA retirement plan" … "[f]rom [Decedent's] employer," which the parties agreed to incorporate into the settlement agreement). A party "may affirmatively acknowledge consent to jurisdiction or take such steps or seek relief that manifests submission to the court's jurisdiction." ***McCullough v. Clark***, 784 A.2d 156, 157 (Pa. Super. 2001); ***see also Frontier Leasing Corp. v. Shah***, 931 A.2d 676, 680 (Pa. Super. 2007) ("[p]ersonal jurisdiction can be established by consent").

- 13 -

Accordingly, Appellant's challenge to subject matter jurisdiction is without merit.

Appellant also argues the orphans' court lacked jurisdiction to clarify its April 2021 Orders more than 30 days after their entry, claiming they "were final orders [that] could not be changed." Appellant's Brief at 18. Appellant cites the Pennsylvania Judicial Code, which states:

> Except as otherwise provided or prescribed by law, a court upon notice to the parties may modify or rescind any order **within 30 days** after its entry, notwithstanding the prior termination of any term of court, if no appeal from such order has been taken or allowed.

42 Pa.C.S.A. § 5505 (emphasis added); *see also* Appellant's Brief at 18. Appellant claims the April 2021 Orders "denied the exceptions filed by the Estate," not Appellant's motions to dismiss. *Id.* at 18. Appellant asserts:

> The clarification the [orphans' court made] to the [April 2021 Orders] is a substantive change which is not permitted under Pennsylvania law. The language of the [April 2021 O]rders is clear and unambiguous, the exceptions filed by the Estate are denied.

*Id.* at 19 (citing *Mfrs. & Traders Tr. Co. v. Greenville Gastroenterology, SC*, 108 A.3d 913, 921 (Pa. Super. 2015) ("Absent a specific rule or statute, the only exception [to 42 Pa.C.S.A. § 5505] is to correct obvious technical mistakes (*e.g.*, wrong dates) **but no substantive changes can be made**." (emphasis in original; citation omitted)).

This issue presents a question of law for which our scope of review is plenary and our standard of review is *de novo. Nicolaou v. Martin*, 195 A.3d 880, 892 (Pa. 2018). The Pennsylvania Supreme Court has explained, "the

- 14 -

limits of jurisdiction enshrined in Section 5505 do not impinge on [the] time-honored inherent power of courts," including the power "to correct obvious and patent mistakes in [an] order[.]" ***Commonwealth v. Holmes***, 933 A.2d 57, 65 (Pa. 2007) (citation omitted); ***see also Mfrs. & Traders***, 108 A.3d at 921 ("In addition to its equitable power to reconsider an otherwise final order after 30 days, a court has inherent power to … correct mistakes of the clerk or other officer of the court, inadvertencies of counsel, or supply defects or omissions in the record at any time." (citation and quotations omitted)).

The record belies Appellant's argument. At the March 15, 2021 hearing, the orphans' court and Appellant's counsel discussed Appellant's motions to dismiss:

> MR. JORDAN: Your Honor, I have a motion to dismiss for lack of standing and a motion to dismiss for lack of jurisdiction. The[] [Estate] filed objections to the accounting. We did not waive any rights by failing to raise those issues at that time under Rule 2.8 of the Pennsylvania Orphans' Court Rules. [With respect to the motion to dismiss for the Estate's alleged lack of standing, u]nder the American Funds account, [Executrix] Kelly Gaydos, individually, is the beneficiary. She has not run any action before this [c]ourt to place the American Funds at issue.[4]
>
> THE COURT: I don't know how the American Funds are at issue. We have a — this is a motion to enforce. …

---

[4] At a later proceeding, counsel for the Estate explained to the orphans' court that with respect to the American Funds, the Executrix "intends to give [the money in the account] to the children, but that [] stopped because of [Appellant's] actions." N.T., 8/27/21, at 12; ***see also id.*** at 11-12 (counsel for the Estate arguing Appellant "was the one that created the issue with that account" when he "contacted [the financial institution] and claimed he was the beneficiary and tried to change it with the power of attorney….").

* * *

THE COURT: All right. What's your other motion?

MR. JORDAN: It's a motion to dismiss for lack of jurisdiction. Two of the accounts are ERISA. By law, they went to [Appellant]. The [E]state tried like hell to get the money. They filed two separate appeals –

THE COURT: Well, I just heard testimony that [Appellant] has the money.

MR. JORDAN: [Appellant] has. But the [E]state wanted to get [the money] before it went to [Appellant].

THE COURT: I haven't [seen Decedent's retirement accounts bear Appellant's] name since 2018. **Both of your motions are denied.**

N.T., 3/15/21, at 47, 49 (emphasis and footnote 4 added).

The orphans' court thereafter opined:

The parties in this case had entered into a settlement agreement on June 17, 2019, and the Estate had spent over two years pursuing [Appellant] to facilitate the settlement agreement. **The court finds it preposterous that [Appellant] and his counsel would argue that the matter was dismissed, by their interpretation of the [April 2021 O]rders .... The case had already been resolved by means of the settlement agreement**; [Appellant] had filed an appeal on April 22, 2021, from the court's order of March 15, 2021; and **there was no basis to believe that the court would dismiss the case in favor of** [**Appellant**.FN6] In denying [Appellant's] motions [to dismiss via the April 2021 Orders], the court struck the language from the proposed order[s] provided by [Appellant's] counsel, and indicated that it was denying the motions. However, due to the court's error, the orders arguably could have been interpreted as though the court had ruled against the Estate. **Clearly, it was not the court's intention to terminate the action against [Appellant] to enforce the settlement agreement. Nevertheless, since [Appellant's counsel] claimed to have misinterpreted the [April 2021 O]rders, the court was within its authority to correct any obvious and inadvertent**

- 16 -

**mistake on the face of the orders**.

> [FN6] The court had denied both motions on the record in open court on March 15, 2021. [N.T., 3/15/]21, p. 49.

Orphans' Court Opinion, 3/4/22, at 8-9 (emphasis added; footnote 6 in original).

The record and law support the orphans' court's reasoning. The orphans' court's handwriting was understandably inartful, as the court was editing the proposed orders to reach a contrary result. Nonetheless, a fair reading of the record and the April 2021 Orders indicates the orphans' court denied Appellant's motions. **See** N.T., 3/15/21, at 49 (orphans' court informing Appellant, "[b]oth of your motions are denied."); **see also** N.T., 8/6/21, at 6-7 (orphans' court advising Appellant's counsel, "if you think that's a fair interpretation, then I'm going to find you in contempt, too, [counsel]."), **and id.** at 6 (orphans' court emphasizing it "scratched [] out" much of the proposed language Appellant's counsel included in the April 2021 Orders). We discern no error.

Appellant next argues that the orphans' court erred by failing to find the settlement agreement void. Appellant claims the settlement agreement is ambiguous and lacks an essential term regarding the payment of income taxes on Decedent's retirement accounts. **See** Appellant's Brief at 23-28. Appellant states: "No evidentiary hearing has ever been held with respect to the terms of the settlement agreement[;] only its enforcement." **Id.** at 24 (citing **Limmer v. Country Belle Coop. Farmers**, 286 A.2d 669, 670 (Pa. Super.

1971) ("an evidentiary hearing into the existence and binding effect of the settlement agreement is the appropriate procedure to be followed in matters of contested settlement agreements has been clearly established by the courts.")); **see also** Appellant's Brief at 24-25 ("[Appellant] has been contesting the settlement agreement since it was proposed to him that he pay all of the [income] taxes…."). According to Appellant, the "only time it is mentioned that [he] is to pay the income taxes is in the August [12], 2021 Order…." **Id.** at 25.

In reviewing this claim, we recognize:

> The enforceability of settlement agreements is governed by principles of contract law. To be enforceable, a settlement agreement must possess all of the elements of a valid contract. As with any contract, it is essential to the enforceability of a settlement agreement that the minds of the parties should meet upon all the terms, as well as the subject-matter, of the agreement.

> \* \* \*

> When there exists conflicting evidence as to whether the parties intended that a particular writing would constitute a complete expression of their agreement, the parties' intent is a question to be resolved by the finder of fact. We will not reverse such finding unless it is unsupported by the evidence, or unless the fact finder has clearly abused its discretion or committed an error of law. …

> If all of the material terms of a bargain are agreed upon, the settlement agreement will be enforced. If, however, there exist ambiguities and undetermined matters which render a settlement agreement impossible to understand and enforce, such an agreement must be set aside.

***Commerce Bank v. First Union Nat'l Bank***, 911 A.2d 133, 145 (Pa. Super.

2006) (citation omitted).  An "oral settlement agreement may be enforceable

and legally binding without a writing.  …  Where parties have reached an oral

agreement, the fact that they intend to reduce the agreement to writing does

not prevent enforcement of the oral agreement."  ***Pulcinello v. CONRAIL***,

784 A.2d 122, 124 (Pa. Super. 2001) (citations omitted).

The orphans' court addressed this issue in detail, explaining:

> The settlement agreement was reached on June 17, 2019, following a pretrial conference with all parties present.  After negotiations between the parties, **all of the essential terms of the agreement were placed on the record, and while under oath, the Executrix and [Appellant] testified to their consent to the terms of the agreement**.  The agreement resolved all outstanding issues including the distribution of three retirement accounts of the Decedent.  [Appellant] agreed that the funds in these three accounts would be split fifty percent to the Decedent's children and fifty percent to himself.  **Counsel for both parties agreed that they would work toward resolving any tax ramifications** following the hearing and reduce the entire agreement to writing.  However, the understanding was that steps would be taken to minimize any adverse tax consequences to the children.
>
> **Following the settlement agreement, [Appellant] engaged in a course of obdurate, dilatory and vexatious conduct to obstruct the facilitation of the settlement agreement. Counsel [for the respective parties had agreed to protect] Decedent's children from any adverse tax consequences.  However, subsequent to the settlement agreement, the Executrix and her counsel learned that [Appellant] had taken the three retirement funds in question and converted the accounts to his own personal accounts, *which created the taxable event and the tax consequences*.**  [Appellant] did not raise an issue with the tax ramifications of the settlement until April of 2021, **nearly two years later**.  As a result of [Appellant's] actions in immediately taking the funds, there would be tax consequences in order for

- 19 -

the Decedent's children to receive their share of the funds pursuant to the settlement agreement. **Any tax consequences are the result of actions taken by [Appellant], and it should not be shared by the children.**

Our Supreme Court, in ***Woodbridge v. Hall***, 76 A.2d 205 (Pa. 1950), held that an oral agreement to settle, which included the essential terms of the agreement between the parties, was enforceable, even though the parties were unable to agree, despite numerous drafts, to the terms of a written settlement agreement. ***See also Kazanjian v. New England Petroleum Corporation***, 480 A.2d 1153 (Pa. Super. 1984). The Superior Court has applied this doctrine more recently regarding settlement agreements:

> Where a settlement agreement contains all of the requisites for a valid contract, a court must enforce the terms of the agreement. This is true even if the terms of the agreement are not yet formalized in writing. Pursuant to well-settled Pennsylvania law, oral agreements to settle are enforceable without a writing.

***Mastroni-Mucker v. Allstate Ins. Co.***, 976 A.2d 510, 518 (Pa. Super. 2009) [(citations omitted)]. If the parties agree on essential terms and intend them to be mutually binding, a contract is formed even though the parties intend to adopt a formal document later which will include additional terms. ***Compu Forms Control, Inc. v. Altus Group, Inc.***, 574 A.2d 618, 624 (Pa. Super. 1990).

In a non-precedential decision, the Superior Court's reasoning in the case of ***Lewis v. Lewis*** is informative with respect to the tax consequences arising from the settlement agreement in a divorce action:

> [Husband/a]ppellant's argument is that Wife must hold him h[arm]less for tax consequences arising from the sale of real properties or liquidation of assets from his retirement account. In this case, however, Wife never acquired ownership of either real property or the assets held in the retirement account. Instead, Wife acquired cash that [a]ppellant derived from the liquidation of his retirement account or real properties. Since Wife never acquired ownership of retirement assets or real

- 20 -

properties that [a]ppellant liquidated, she was never obligated, under the cited provision [of the parties' marital settlement agreement,] as an owner of the assets or properties that incurred tax consequences. The tax consequences attached to the liquidation of retirement funds and real properties that [a]ppellant undertook to generate liquid assets to give Wife. Wife never acquired the real properties or retirement funds directly. Hence, this provision is inapplicable and the $253,000 due to Wife in cash was a final sum. Thus, we discern no error.

2015 WL 6872621, pg. 5 (Pa. Super. 2015).

Similarly, in the instant case, the tax consequences attached to the liquidation of the Decedent's retirement accounts, which [Appellant] undertook to liquidate and convert to his own name. [Appellant] agreed to pay fifty percent of the value of the accounts to the Decedent's minor children in settlement. Had the Estate prevailed in the litigation challenging [Appellant's] use of the Decedent's Power of Attorney dated October 22, 2017, to change the beneficiary designations on her accounts prior to her death on November 17, 2017,[5] the children would have received 100% of the accounts. As [] the Wife in the *Lewis* case, **the children never acquired the retirement funds directly, and [they] should not be subject to [Appellant's] tax consequences.**

There is no dispute that a settlement agreement was reached between the parties, that the terms of the agreement were place[d] on the record in open court, and that [Appellant] and the Executrix acknowledged their consent to the terms and their representation by counsel. This agreement is enforceable without question. The [] issue in dispute is whether the children's share of the funds pursuant to the settlement should be diminished by [Appellant's] tax consequences, which he created in liquidating the accounts subject to the settlement agreement. The answer to this must be in the affirmative. In the two years following the settlement agreement, it was revealed that **[Appellant] had taken actions that thwarted the ability of [the Estate] to facilitate the agreement so the children**

---

[5] Counsel for the Estate represented that the parties agreed to settle "on the eve of trial when [the Estate was] prepared to present evidence of fraud against [Appellant]." N.T., 8/27/21, at 4.

**would not be burdened with substantial tax consequences**. Due to the fact that [Appellant] had removed all of the funds and placed them into his own personal accounts, there were then tax consequences to him to facilitate the settlement agreement, which he had agreed to complete on June 17, 2019.[FN9] The children had nothing to do with the actions of [Appellant,] and it would be unconscionable to force the children to contribute to [Appellant's] tax consequences.

> [FN9] [Appellant] offered no expert testimony with respect to the tax consequences he was allegedly facing, and offered little testimony himself. The Decedent died on November 17, 2017, so that, presumably, the taxable event would have occurred in tax year 2017, and **[Appellant], a banking professional, would have been well aware of the tax consequences when he entered into the settlement agreement on June 17, 2019.**

Orphans' Court Opinion, 3/4/22, at 9-12 (emphasis and footnote 5 added; footnote 9 in original; remaining footnotes omitted); **see also id.** at 14 (emphasizing Estate's counsel's testimony "that had [Appellant] not converted [Decedent's] accounts to his name, the transfers to the children could have been tax-deferred." (footnote omitted)). The orphans' court's reasoning is accurate and compelling. Accordingly, we adopt the reasoning in concluding there is no merit to this issue. **See id.**

Appellant's final claim is that the orphans' court improperly imposed sanctions in contravention of law, equity, and the facts of record. **See** Appellant's Brief at 29-32. Appellant asserts he

> should not have been sanctioned at all for not complying with the settlement agreement[,] as the [orphans'] court never held a hearing as to the terms of the settlement agreement. The court also did not make specific findings of fact[,] nor was the law followed in assessing the sanctions.

- 22 -

Appellant's Reply Brief at 18; **see also** Appellant's Brief at 29 (claiming the orphans' court "should have held a hearing on the provisions of the settlement agreement and determined the terms of the settlement. Then if [Appellant] did not comply, sanctions may have been appropriate.").

Appellant also states he

contested the proposed settlement agreement as it provided for terms that [Appellant] was to pay all of the income taxes, which were not part of the agreement placed on the record. The Estate would present [to the orphans' court] an invoice for the amount of time [the Estate's counsel had] spent since the last hearing[,] and the court would award the Estate all of the fees it was requesting with no notice to [Appellant] of the amount of fees being requested.

Appellant's Brief at 32. Appellant claims "[t]here was never a finding that [Appellant] intentionally disregarded the court or that his conduct was obdurate or vexatious." **Id.** (citing **Twp. of S. Strabane v. Piecknick**, 686 A.2d 1297, 1301 (Pa. 1996) ("[A]ny award of counsel fees pursuant to 42 Pa.C.S. § 2503(7)[6] must be supported by a trial court's specific finding of dilatory, obdurate or vexatious conduct." (footnote 6 added)).

Our review is well-settled:

[T]he imposition of [attorneys' fees or] costs in an Orphans' Court proceeding is a matter left to the sound discretion of that court and will not be disturbed on appeal absent an abuse of discretion. An abuse of discretion occurs when the court misapplies existing

---

[6] The statute provides that any participant may be awarded "reasonable counsel fee[s]" as a "sanction against another participant for dilatory, obdurate or vexatious conduct during the pendency of a matter." 42 Pa.C.S.A. § 2503(7).

- 23 -

law, makes a manifestly unreasonable judgment, or rules with partiality, prejudice or ill will.

***In re Padezanin***, 937 A.2d 475, 484 (Pa. Super. 2007) (citations omitted);

***see also Fancsali v. Univ. Health Ctr.***, 761 A.2d 1159, 1162 (Pa. 2000) (appellants bear a "heavy burden" to establish an abuse of discretion). We have explained:

> The trial court has great latitude and discretion with respect to an award of attorneys' fees pursuant to a statute[, including 42 Pa.C.S.A. § 2503(7), ***supra***]. In reviewing a trial court's award of attorneys' fees, our standard is abuse of discretion. If there is support in the record for the trial court's findings of fact that the conduct of the party was obdurate, vexatious or in bad faith, we will not disturb the trial court's decision. Obdurate is defined as unyielding or stubborn.

***In re Padezanin***, 937 A.2d at 483-84 (citations omitted).

> With respect to contempt,

> [e]ach court is the exclusive judge of contempts against its process. The contempt power is essential to the preservation of the court's authority and prevents the administration of justice from falling into disrepute. When reviewing an appeal from a contempt order, the appellate court must place great reliance upon the discretion of the trial judge. On appeal from a court's order holding a party in contempt of court, our scope of review is very narrow. We are limited to determining whether the trial court committed a clear abuse of discretion.

***Barna v. Langendoerfer***, 246 A.3d 343, 346 (Pa. Super. 2021) (citation omitted). "The essential due process requisites for a finding of civil contempt are notice and an opportunity to be heard." ***E.K. v. J.R.A.***, 237 A.3d 509, 526-27 (Pa. Super. 2020) (citation omitted).

Again, the orphans' court has provided detailed reasoning:

[Appellant] alleges that the court did not follow proper procedure before determining sanctions against him and denied him due process "when there was no hearing or determination as to his willingness to comply with the settlement." [Appellant's Rule 1925(b) Statement, 9/24/21, ¶]¶ 8 and 9. These claims are refuted by the record. The court conducted hearings on [Appellant's] failure to comply and failure to facilitate the settlement agreement on October 8, 2020, December 31, 2020, March 15, 2021, August 6, 2011, and August 27, 2021. On March 15, 2021, Attorney Deborah Wysni testified on behalf of the Estate of the exhaustive efforts over the previous **twenty-one months**, to retrieve the necessary information from [Appellant] in order to transfer the funds to the children **per the settlement**, with respect to the [Decedent's] three funds, Transamerica, Highmark 401(k) and Mercer (now Morneau-Shepell account). Ms. Wysni testified to her recent discovery that [Appellant] had converted the Highmark 401(k) to his name in December of 2018. [N.T., 3/15/21,] p. 29, 33. She further discovered that **[Appellant] had converted other 401(k) funds within days after the settlement agreement**, in 2019, and the conversion subjected [Appellant] to 20% tax withholding. [*Id.* at] p. 14-15. Because the Estate was not aware that the accounts were transferred from the Decedent's name, the prior requests for information from the financial firms were rejected. [*Id.* at] p. 53. Ms. Wysni further testified that **had [Appellant] not converted the accounts to his name, the transfers to the children could have been *tax-deferred***. [*Id.* at] p. 36.

[Appellant] **admitted** that he had converted the Highmark funds to his name since 2018. [*Id.* at] p. 41-42. **Had he revealed this information sooner, months and months of discovery could have been avoided.** [Appellant was] ordered to provide the information for these accounts since the court's order dated October 8, 2020. **[Appellant] admittedly facilitated the conversion of these accounts to his own name, which created the tax consequences he has been complaining of for nearly two years**. Moreover, since the funds had been fully converted to accounts in [Appellant's] name since 2019, **he has had the ability to complete payment of**

**the settlement he agreed to**[7] on June 19, 2019.  When asked by the court why the settlement was not accomplished months ago, [Appellant's] counsel responded merely "I don't know."  [***Id.*** at] p. 51.

* * *

**[Appellant] demonstrated his unyielding behavior and stubbornness throughout this litigation, but particularly with regard to completion of the agreed settlement.**  The settlement was reached in open court on June 17, 2019, but the Estate refrained until August 11, 2020, to bring a motion to compel.  The court conducted hearings on [Appellant's] failure to comply with the settlement agreement on October 8, 2020, December 31, 2020, and again on March 15, 2021, August 6, 2011, and August 27, 2021.  At more than one of these hearings, [Appellant] did not bother to appear, including the hearing held on August 6, 2021, which generated the order appealed from, although counsel appeared on his behalf.  At the conclusion of that hearing, the court found [Appellant] in contempt for his failure to comply with the March 15th order, failure to complete the settlement of June 17, 2019, and failure to appear, and ordered him to pay attorneys' fees incurred by the Estate in the enforcement of the settlement.  The court further ordered [Appellant] to personally appear before the court on August 27, 2021, to show proof of compliance or face additional sanctions, including the possibility of detention and daily penalties.  [N.T., 8/6/21, at] pp. 37-45.

**For over two years, [Appellant] demonstrated a course of dilatory, obdurate and vexatious conduct *to thwart and delay the facilitation of the settlement agreement.***  As a result, the Executrix had to repeatedly petition the court seeking information and attempting to enforce the settlement agreement.  **[Appellant] was warned of his**

---

[7] Appellant's counsel represented to the orphans' court: "There's enough money in [Decedent's Highmark] Transamerica [account] and the American Funds account that if we lose on appeal, there's enough to pay [the Estate.]"). N.T., 8/27/21, at 13; ***see also id.*** at 17-18 (same), and ***id.*** at 16 (Appellant's counsel stating that Appellant "has money from the sale of the [marital] house….").

**liability for sanctions and given multiple opportunities to avoid sanction**[8] and comply with the settlement agreement, but he chose not to do so, and continued to defy the court's orders. **[Appellant] offered no reasonable excuse for his failure to comply, and admittedly had the ability to pay and complete the settlement agreement**, as he had converted the funds to his own name in 2018 through 2019. At no time did [Appellant] offer testimony of his willingness to comply with the settlement and the court's orders, during the **five (5) contempt hearings** conducted by the court. Nevertheless, [Appellant] has the unmitigated gall to allege that the court denied hi[m] due process "when there was no hearing or determination as to his willfulness to comply." [Appellant's Rule 1925(b) Statement, 9/24/21,] ¶ 9.

It is disingenuous for [Appellant] to attempt to infer that he may have been willing to comply with the settlement without the imposition of sanctions, and that the court should have conducted additional proceedings to make that determination.

Orphans' Court Opinion, 3/4/22, at 13-16 (emphasis and footnotes 7 & 8 added; footnote citations to the record moved to body; one footnote omitted).

As the record fully supports the orphans' court's reasoning, we discern no abuse of discretion. *See In re Padezanin*, 937 A.2d at 484 ("If there is support in the record for the trial court's findings of fact that the conduct of the party was obdurate, vexatious or in bad faith, we will not disturb the trial court's decision." (citation omitted)). Appellant's challenge to the orphans' court's imposition of sanctions is meritless.

---

[8] The orphans' court cautioned Appellant's counsel: "It's time for [Appellant] to consider … how much more he's going to spend on legal fees incurred by the other side. I think you should talk to [Appellant] about that." N.T., 8/27/21, at 28. Appellant's counsel, after consulting with Appellant, replied: "I've been told that [Appellant] has no desire to discontinue the appeal process." *Id.*

As a corollary, and after careful consideration, we reference the rules of appellate procedure, which permit this Court's *sua sponte* imposition of counsel fees when we determine an "appeal is wholly frivolous or **taken solely for delay or that the conduct of the participant** against whom costs are to be imposed **is dilatory, obdurate or vexatious**." Pa.R.A.P. 2744 (emphasis added); *see also* Pa.R.A.P. 2741(2) ("If an order is affirmed, costs shall be taxed against the appellant unless otherwise ordered"), and Pa.R.A.P. 2743 (listing other costs on appeal). "In determining the propriety of such an award, we are [] guided by the principle that an appeal is not frivolous simply because it lacks merit; rather, it must be found that the appeal has no basis in law or fact." **U.S. Claims, Inc. v. Dougherty**, 914 A.2d 874, 878 (Pa. Super. 2006) (citation omitted). In such instances, this Court returns the case to the trial court for computation of an appropriate award. **Mellon Bank, N.A. v. Druzisky**, 800 A.2d 955, 958 (Pa. Super. 2002); *see also* Pa.R.A.P. 2744.

This appeal lacks any basis in law or fact, leading us to conclude that Appellant continues to seek to delay the case, rather than pay the Estate in full **as he agreed more than three years ago**.[9] We are thus compelled to exercise our authority under Rule 2744 to award counsel fees and costs to the

---

[9] More than one year ago, counsel for the Estate represented: "[Decedent's son] is in college. He has no money to pay for college. [Decedent's] daughter is suffering. She's sick and we're in the third year of this since [Appellant] said he was going to pay." N.T., 8/27/21, at 18.

Estate. ***See***, ***e.g.***, ***Winpenny v. Winpenny***, 775 A.2d 815, 818 (Pa. Super. 2001) ("This case is a clear example of a litigant who has abused the process of the courts of this Commonwealth. Accordingly, we find appellant's habitual conduct warrants the imposition of additional costs, fees and damages."); ***cf.*** ***State Farm Mut. Auto. Ins. Co. v. Allen***, 544 A.2d 491, 494 (Pa. Super. 1988) (finding "the record unclear as to whether appellant brought the instant action vexatiously or in bad faith" where appellant merely failed to show good cause). Accordingly, we affirm the orphans' court's order, but remand for further proceedings pertaining to the calculation and award of counsel fees and costs incurred by the Estate in defending this appeal. ***See*** Pa.R.A.P. 2744.

Order affirmed. Case remanded for proceedings consistent with this Opinion. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 11/15/2022