J-S04044-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA  :   IN THE SUPERIOR COURT OF
                                            :          PENNSYLVANIA
                                            :

                  v.                      :
                                            :

JONATHAN TUNNELL             :
                                          :

             Appellant        :     No. 1241 EDA 2022

Appeal from the Judgment of Sentence Entered April 5, 2022
In the Court of Common Pleas of Montgomery County Criminal Division
at No(s):  CP-46-CR-0004019-2021

BEFORE:  MURRAY, J., KING, J., and PELLEGRINI, J.[*]

MEMORANDUM BY PELLEGRINI, J.:         **FILED MARCH 22, 2023**

Jonathan Tunnell (Tunnell) appeals from the April 5, 2022 judgment of sentence imposed by the Court of Common Pleas of Montgomery County (trial court) following his convictions for first-degree murder, possession of a firearm and carrying a firearm without a license.[1]  We affirm.

**I.**

We glean the following facts from the certified record.  On June 14, 2021, a maintenance worker at the Fairfield Inn near the King of Prussia mall entered one of the rooms in the hotel because a fire alarm had been sounding inside for several hours.  He discovered the body of the victim, Henry Palmen,

---

[*] Retired Senior Judge assigned to the Superior Court.

[1] 18 Pa.C.S. §§ 2502(a), 907(b), & 6106(a)(1).

on the floor. An autopsy confirmed that the victim had died from a single gunshot wound to the head at close range. Law enforcement recovered a cell phone, backpack, candy-type edibles, a white envelope containing pills and other personal affects in the room. The narcotics were identified as alprazolam, Etizolam and Adderall, as well as various THC products and a vape pen. Law enforcement believed that some of the drugs were for personal use while others appeared to be for sale.

Detective Michael Laverty responded to the scene and examined the victim's cell phone. He discovered several conversations that he believed to be related to selling narcotics, including a recent exchange with a contact labeled as "Big John – Robyn Guy." N.T., 4/4/22, at 63. The victim gave Big John the address of the hotel and said that he had a "box of flower" arriving at "D's" on Monday. *Id.* at 64. Big John responded that he had $6,000 to spend. Detective Laverty believed this exchange indicated that Big John was purchasing marijuana from the victim. He also located a photo on the victim's phone of a shipping label for a package that had been delivered that day. The victim texted a contact named Deanna Moore regarding the package's progress and when it had been marked as delivered.

Detectives obtained a search warrant for the address where the package was to be delivered and executed it that day. They had already identified Tunnell as a possible suspect based on the subscriber information for the "Big John" number in the victim's phone. During the search of the home, they

found a digital scale, marijuana and mail with Tunnell's name on it.  They did not recover the package.  Detectives recovered surveillance footage from a neighboring house that showed Tunnell entering the home around 12:35 PM.  Approximately 15 minutes later, the package was delivered and Tunnell carried the box off the porch and placed it in a trash can outside.  Ten minutes later he retrieved the box from the trash and placed it in Moore's vehicle.

Detectives also obtained surveillance footage from the Fairfield Inn, the area surrounding the King of Prussia Mall, and SEPTA.  Video depicted Tunnell getting off a bus at the mall and entering the Fairfield Inn around 10:21 AM.  Approximately 20 minutes later he was depicted walking back toward the mall.  Because he was depicted entering the hotel but not leaving, law enforcement determined he had exited the building through a back door that was not under surveillance.  He then got back on a bus line to the Norristown Transportation Center.

The following day, detectives obtained a pen register and trap and trace order for Tunnell's cell phone and used the information to identify the phone's location.  The order informed investigators of all incoming and outgoing communications but they did not listen to any calls or read any messages.  Using the order, United States Marshalls located Tunnell leaving a Microtel Hotel and getting on a bus and placed him under arrest.  They recovered his cell phone during his arrest.

Investigators obtained a search warrant for Tunnell's room at the Microtel Hotel. They recovered a backpack, two storage totes, a shopping bag, sneakers and grey sweatpants. The backpack contained baggies, pills, a bag containing a green substance and rolling papers. One of the storage totes contained ten packages of a marijuana-like substance, a sealed package with smaller individually-sized marijuana packages and a baggie containing pills. The pills were similar to those recovered at the Fairfield Inn crime scene. The other storage tote contained prayer rugs, clothes, paperwork and a wallet with Tunnell's identification. In addition to the narcotics and paraphernalia, the other bags in the room contained various personal items. The narcotics were identified as methamphetamine, fentanyl, marijuana, Etizolam and other prescription medications.

Investigators also obtained a search warrant for Tunnell's cell phone and examined the information from his phone, his phone records from AT&T, and the information from the victim's phone during the time period of June 13 to June 15, 2021. Tunnell and the victim exchanged messages and the victim told Tunnell that he had "a box of flower landing at D's Monday." N.T., 4/5/22, at 53. Tunnell responded that he had $6,000 to spend. The victim later texted Tunnell that he was traveling to the area from Raleigh and would be checking in to the Fairfield Inn by 8 AM. Analysis of Tunnell's cell site usage showed that his phone traveled from Philadelphia to King of Prussia on the morning of the murder, and that he searched online for the Fairfield Inn several times.

The phone activity was in the vicinity of the homicide during the time in which it occurred. The phone then traveled to the area where the package was delivered before returning to the Microtel Hotel. The next day, the phone searched for crime and murder news in the King of Prussia area.

After his arrest, Tunnell waived his *Miranda*[2] rights and agreed to speak with detectives.[3] In relevant part, Tunnell admitted that he had planned to meet with the victim to buy marijuana but first claimed that the victim stood him up. While he initially said that the victim was supposed to come to him for the sale, when detectives told him about the surveillance footage, he conceded that he went to the Fairfield Inn. He then asserted that he went into the victim's hotel room and bought a pound of marijuana but that the victim was alive when he left. He further admitted to picking up the victim's package containing nine pounds of marijuana from Moore's home. When asked how he thought the victim died, Tunnell first guessed that he had had a seizure. After further questioning, he then said that the victim had shorted him in a prior deal and was supposed to compensate him in the instant exchange. When Tunnell arrived at the hotel, he told the victim that he would not pay him because the victim had "played" him in the past. The two began

_____

[2] *Miranda v. Arizona*, 384 U.S. 436 (1966).

[3] The videotaped interview was played at Tunnell's trial.

to tussle and Tunnell shot him once in the head, but he said that he had been aiming for the victim's shoulder.

Tunnell filed a motion to suppress all evidence obtained as a result of the pen register and trap and trace order, including the evidence recovered from his room at the Microtel Hotel, the information on his phone and his confession. Tunnell argued that the application submitted for the pen register and trap and trace order was undated and, as a result, could not establish probable cause for the order. The trial court had granted the application on June 15, 2021, the day after the victim's body was discovered. Following argument, the trial court denied the motion to suppress.

Tunnell ultimately proceeded to a jury trial and was convicted of the above-mentioned charges. The trial court sentenced him to life imprisonment for the charge of first-degree murder and concurrent sentences of 4 to 8 years' imprisonment for carrying a firearm without a license and 9 to 18 months' imprisonment for possession of a firearm. He filed a post-sentence motion challenging the sufficiency and weight of the evidence to support his conviction for first-degree murder, which the trial court denied. He and the trial court have complied with Pa. R.A.P. 1925.

## II.

On appeal, Tunnell challenges the denial of his motion to suppress and the sufficiency and weight of the evidence to support his conviction for first-degree murder.

**A.**

We first address Tunnell's challenge to the denial of his suppression motion.[4] He contends that the undated application for the pen register and trap and trace warrant was facially defective. He argues that because the application was undated, it is impossible to determine when the affidavit of probable cause was presented to the issuing authority. He concludes that the record does not establish when the affidavit of probable cause was presented to the issuing authority and, as a result, the application was defective and all evidence obtained as a result of the warrant must be suppressed.[5] We disagree.

_____

[4]

> An appellate court's standard of review in addressing a challenge to a trial court's denial of a suppression motion is limited to determining whether the factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct. [Because] the prosecution prevailed in the suppression court, we may consider only the evidence of the prosecution and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole. Where the record supports the factual findings of the trial court, we are bound by those facts and may reverse only if the legal conclusions drawn therefrom are in error.

*Commonwealth v. Postie*, 110 A.3d 1034, 1039 (Pa. Super. 2015) (citation omitted).

[5] The Commonwealth argues that Tunnell has waived this claim through failure to cite to pertinent authority and by raising a different legal argument than that presented in his motion to suppress, namely, that because the application was undated, it is impossible to determine when the affiant appeared before the issuing authority. While the argument section of his brief is lacking, we

*(Footnote Continued Next Page)*

Applications for pen register and trap and trace orders are governed by the Wiretapping and Electronic Surveillance Control Act (Wiretap Act). An application must include:

> (1) The identity and authority of the attorney making the application and the identity of the investigative or law enforcement agency conducting the investigation.
>
> (2) A certification by the applicant that the information likely to be obtained is relevant to an ongoing criminal investigation being conducted by that agency.
>
> (3) An affidavit by an investigative or law enforcement officer which establishes probable cause for the issuance of an order or extension of an order under section 5773.

18 Pa. C.S. § 5772(b). The court may grant the application and issue an order "if the court finds that there is probable cause to believe that information relevant to an ongoing criminal investigation will be obtained by such installation and use on the targeted telephone." 18 Pa. C.S. § 5773(a). Orders properly issued pursuant to the Wiretap Act also meet the warrant requirements of the Fourth Amendment to the federal constitution. *Commonwealth v. Pacheco*, 227 A.3d 358, 371-72 (Pa. Super. 2020).

---

are able to discern the basis of his claim and our review is not hampered, so we decline to find waiver on that basis. *See In re Estate of Tomcik*, 286 A.3d 748, 756 (Pa. Super. 2022) (declining to find waiver based on violation of Rule of Appellate Procedure 2119). Additionally, his challenge to the undated application is substantially the same or at least fairly suggested by the argument he made in his suppression motion. *See* Motion to Suppress, 2/9/22, at ¶¶ 8-12; Pa. R.A.P. 1925(b)(4)(v). Accordingly, we decline to find waiver on that basis as well.

The trial court explained its rationale for denying the motion as follows:

> First, this court acknowledged that in this case there was an application signed by the appropriate [assistant district attorney], there was an affidavit which was signed by the appropriate detective, and the reviewing court, Judge Demchick-Alloy, reviewed those, indicated that she approved after swearing in the affiant, and she signed and dated the order. Based upon this reasoning, this court concluded that there was no violation that would support suppression of the evidence. Accordingly, this court properly denied the motion to suppress. As stated by defense counsel, there is simply no case law to support his position, and as noted by the Commonwealth all the application requirements had been satisfied. Therefore, the application itself was not defective. Additionally, any defect in the application was remedied when Judge Demchick-Alloy, the reviewing court, issued the order, approving the application. For these reasons, suppression was denied.

Trial Court Opinion, 7/8/22 at 32 (citations omitted, cleaned up).

We discern no abuse of discretion. The application for the order was supported by probable cause, which Tunnell does not dispute. Section 5772(b) does not include any date requirement for an application under that section. Moreover, we observe that the application includes information gleaned from the investigation on June 14 and June 15, 2021, and the order granting the application was dated June 15, 2021. Thus, the record supports the conclusion that the application was submitted to the issuing authority on the day the order was signed, which was the day after the victim's body was discovered. Without any period of time elapsing between the investigation that developed Tunnell as a suspect and the day that the court issued the pen register and tap and trace order, there is no danger that the probable cause would have dissipated before the order was signed. Finally, our review

- 9 -

confirms that the trial court's order complied with the requirements of Section 5773. Accordingly, no relief is due.

**B.**

Next, Tunnell challenges the sufficiency of the evidence to support his conviction for first-degree murder, arguing that the Commonwealth failed to establish beyond a reasonable doubt that he had the specific intent to kill the victim.[6] He contends that his confession was the only evidence introduced at trial that bore on his mindset at the time of the crime, and it established only that he accidentally shot the victim in the head during their struggle, even though he was only aiming for his shoulder.[7] This claim is meritless.

_____

[6] Our standard of review is well-settled:

> The standard we apply in reviewing the sufficiency of the evidence is whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying [this] test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances.

**_Commonwealth v. Lopez_**, 57 A.3d 74, 79 (Pa. Super. 2012) (citation omitted).

[7] The Commonwealth contends that Tunnell has waived this claim by failing to specify that he was challenging the intent element in his Pa. R.A.P. 1925(b) statement. However, the trial court was able to glean his argument and

_(Footnote Continued Next Page)_

A person is guilty of first-degree murder if the Commonwealth establishes beyond a reasonable doubt "(1) a human being was unlawfully killed; (2) the defendant was responsible for the killing; and (3) the defendant acted with malice and a specific intent to kill." *Commonwealth v. Thomas*, 54 A.3d 332, 335 (Pa. 2012); 18 Pa.C.S. 2502(a). An intentional killing is "willful, deliberate and premeditated," and intent to kill can be formed in a fraction of a second. *Commonwealth v. Cash*, 137 A.3d 1262, 1269 (Pa. 2016) (citation omitted). "[T]he specific intent to kill may be inferred where . . . the accused uses a deadly weapon on a vital part of the victim's body." *Id.* (holding that intent to kill was established when defendant shot the victim in the back of the head).

Additionally, we note that "[t]he Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence." *Commonwealth v. Gause*, 164 A.3d 532, 541 (Pa. Super. 2017) (citation omitted). "Finally, the trier of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence." *Id.* On appeal, this court evaluates the full record to determine whether sufficient evidence

---

address it in its opinion based on the defense Tunnell presented at trial, which mirrors the claim he now raises on appeal. *See* Trial Court Opinion, 7/8/22, at 43-45. Accordingly, we decline to find this issue waived. *See* *Commonwealth v. Sipps*, 225 A.3d 1110, 1113 (Pa. Super. 2019).

was presented to support each element of the crime charged; however, we do not second-guess the jury's factual determinations.

Tunnell's sufficiency argument merely requests that this Court credit the self-serving statement he gave to law enforcement after his arrest, even though the jury apparently rejected that statement in reaching its verdict on the charge of first-degree murder. Viewed in the light most favorable to the Commonwealth, the evidence established that Tunnell arranged to purchase narcotics from the victim, even though he was dissatisfied with a previous sale and felt that the victim had "played" him. He brought a firearm with him to the hotel where he met the victim and fired a shot into his head, undoubtedly a vital organ of the body. *See Cash*, *supra*. Relying on information he had received from the victim prior to their meeting, he then left the scene of the murder and proceeded to the address where the victim had marijuana shipped and retrieved the package containing the drugs. This evidence is sufficient to support the conclusion that Tunnell intentionally killed the victim in retaliation for the previous sale and to obtain the package of marijuana that he knew would be delivered to the victim that day. This claim is meritless.

**C.**

Finally, Tunnell argues that the trial court abused its discretion by denying his motion for a new trial and holding that the verdict was not against

the weight of the evidence.[8]  Much like his sufficiency claim, this argument hinges on the weight the jury afforded to Tunnell's confession.  He argues that he had no motive to kill the victim, who was a valuable source of narcotics. He asserts that the killing was accidental following a "tussle" when he refused to pay full price for the narcotics, even though he intended to continue his business relationship with the victim.  Tunnell's Brief at 19.

"An allegation that the verdict is against the weight of the evidence is addressed to the discretion of the trial court."  ***Commonwealth v. Sullivan***, 820 A.2d 795, 805-06 (Pa. Super. 2003) (citation omitted).  "Trial judges, in reviewing a claim that the verdict is against the weight of the evidence do not sit as the thirteenth juror.  Rather, the role of the trial judge is to determine that notwithstanding all the facts, certain facts are so clearly of greater weight that to ignore them or to give them equal weight with all the facts is to deny justice."  ***Commonwealth v. Widmer***, 744 A.2d 745, 752 (Pa. 2000) (quotations omitted).  A new trial is appropriate only when the verdict "is so

---

[8] When evaluating a challenge to the weight of the evidence to support a conviction, this court does not reweigh the evidence presented at trial, but rather evaluates the trial court's denial of the motion for a new trial for an abuse of discretion. ***Commonwealth v. Clay***, 64 A.3d 1049, 1054-55 (Pa. 2013).  An abuse of discretion occurs "where the course pursued represents not merely an error of judgment, but where the judgment is manifestly unreasonable or where the law is not applied or where the record shows that the action is a result of partiality, prejudice, bias or ill-will." ***Id.*** (citation omitted).  A trial court's determination that the verdict was not against the weight of the evidence is "[o]ne of the least assailable reasons for granting a new trial." ***Id.*** (citation omitted).

contrary to the evidence as to shock one's sense of justice." ***Commonwealth v. Olsen***, 82 A.3d 1041, 1049 (Pa. Super. 2013) (citation omitted). "[T]he evidence must be so tenuous, vague and uncertain that the verdict shocks the conscience of the court." ***Commonwealth v. Akhmedov***, 216 A.3d 307, 326 (Pa. Super. 2019) (*en banc*) (citation omitted).

Again, Tunnell's argument depends on the veracity of his statement to police. As the trial court observed, Tunnell's statement changed drastically throughout the course of the interrogation. He began by denying ever going to the Fairfield Inn, then contended that the victim was alive when he left the hotel, then finally stated that he shot the victim accidentally during their "tussle." His statement changed materially each time the interrogating officers revealed new information from their investigation and he was forced to admit to prior lies. Under those circumstances, the trial court concluded that the jury disregarded Tunnell's explanation of the shooting as incredible and self-serving. ***See*** Trial Court Opinion, 7/8/22, at 41-42. Further, our review of the record reveals that the remaining evidence against Tunnell was not "so tenuous, vague and uncertain that the verdict shocks the conscience of the court." ***Akhmedov***, ***supra***. Accordingly, the trial court did not abuse its discretion in denying relief on this claim.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 3/22/2023