J-A20022-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| ANDREW KLIMENKO AND CARING FAMILY HOME CARE SERVICES, LLC | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| DMITRY DENABURG, NATALIE DENABURG, AND CARING FAMILY HOME CARE PROVIDERS, LLC, ANDREW KLIMENKO, AND MASS MEDIA MANAGEMENT, LLC | : | No. 363 EDA 2025 |
| | : | |
| APPEAL OF: DMITRY DENABURG, NATALIE DENABURG, AND CARING FAMILY HOME CARE PROVIDERS, LLC | : | |

Appeal from the Order Entered December 12, 2024
In the Court of Common Pleas of Bucks County Civil Division at No(s):
2023-01887

BEFORE:  MURRAY, J., McLAUGHLIN, J., and FORD ELLIOTT, P.J.E.[*]

MEMORANDUM BY McLAUGHLIN, J.:                **FILED NOVEMBER 18, 2025**

Dmitry Denaburg ("Dmitry"), Natalie Denaburg ("Natalie"), and Caring Home Family Care Providers, LLC ("CHFC Providers") (collectively, "Appellants") appeal from the order granting the motion of Andrew Klimenko and Caring Home Family Care Services, LLC ("CHFC Services") ("Appellees") to enforce a settlement agreement. Appellants argue the record does not support the court's conclusion that the parties entered a binding settlement

_____

[*] Retired Senior Judge assigned to the Superior Court.

agreement. They also maintain that the court violated the law of the case doctrine by overruling its alleged previous denial of the motion. We affirm.

Klimenko and Dmitry are each 50% members of two limited liability companies that provide in-home care services: Caring Home Family Care, LLC ("CHFC") and CHFC Services. Klimenko is a silent investor, and the Denaburgs — who are husband and wife — operate the businesses. Appellees filed a complaint in May 2023 alleging that the Denaburgs secretly formed a third entity – CHFC Providers – "to self-deal [and] divert the assets and/or business opportunities of CHFC and CHFC Services to themselves[.]" Complaint, 5/31/23, at ¶ 8. The complaint advanced breach of contract and related claims. The court later granted Appellees' petition for a receiver.

Approximately one year later, on May 31, 2024, Appellees filed a motion to enforce a settlement agreement.[1] They asserted that the parties had "agreed to all of the material terms of a settlement of this action," which were memorialized in the exchange of draft settlement term sheets. Motion to Enforce, 5/31/24, at ¶ 2. Appellees claimed they sent an initial term sheet to Appellants on April 6, 2024, and Appellants sent back a redlined version two days later, on April 8, 2024, proposing modifications. Appellees alleged that the following month, they prepared and sent a draft of the settlement agreement ("May Settlement Agreement"), incorporating all material terms

---

[1] The motion was supported by a memorandum of law. Appellees later filed a supplemental memorandum of law and a second supplemental memorandum of law.

that had been included in the April 8 redlined term sheet, but Appellants refused to sign it.

Attached to Appellee's motion to enforce was a supporting affidavit by Klimenko. Klimenko averred that during a meeting on March 22, 2024, Dmitry "admitted to me that he wished to consummate the settlement which, to my understanding, the parties and their attorneys had reached agreement on in principle, including all essential terms." Klimenko Affidavit at ¶ 2. According to Klimenko, Dmitry told Klimenko that the attorneys should work out the remaining terms. *Id.* Klimenko averred he "promptly advised the [r]eceiver of [Dmitry] Denaburg's statement and intention to consummate the settlement[.]" *Id.*

Appellants filed an answer in opposition to the motion.[2] They denied the parties ever agreed to the settlement terms and claimed that their attempts at negotiations had failed. They alleged that on March 22, 2024, the parties met at the courthouse regarding the appointment of a temporary receiver. Appellants alleged that after a conference, Dmitry, Klimenko, and their attorneys went to the courthouse cafeteria "and attempted to agree upon some type of settlement." Memorandum of Law, 7/16/24, at 3. Appellants asserted that thereafter, on April 2, 2024, Appellees circulated a proposed term sheet, which Appellants did not accept.

---

[2] Appellants later filed a memorandum of law and supplemental memorandum of Law.

According to Appellants, Denaburg and Klimenko met again on April 6, after which Appellees circulated another term sheet. Appellants claimed a chain of emails between the parties on April 6 show that Appellants did not agree to the April 6 term sheet, and that Appellees understood that it was not binding until the parties signed it. *Id.* at 4. Appellants quoted an e-mail in which Klimenko wrote, "Rather than meet and have more misunderstandings, we need to have the lawyers work out clear and detained language of the term sheet, which will only be binding when we have signed it." *Id.* at 5 (quoting Exh. 6) (emphasis omitted). They also pointed to an e-mail from Appellees' counsel regarding the April 6 term sheet, in which counsel conveyed that Klimenko had told him that "many things were not discussed or agreed," and had asked Appellants to propose modifications. Answer to Motion to Enforce, 6/21/24, at ¶ 4.

Appellants claimed that their April 8 redlined term sheet included additional material terms. One such material term was that Appellees would agree to enter a stipulation by April 10 extending Appellants' April 18 deadlines for filing an answer and counterclaims to the second amended complaint. *Id.* at ¶¶ 5-6. Appellants asserted the cover letter for the e-mail explicitly stated that the "offer was time-sensitive." *Id.* at ¶ 7. They contended that Appellees' failure to agree to their April 8 term sheet and enter the stipulation by April 10 terminated that offer. Appellants highlighted an e-mail from Appellees' counsel on April 10, stating, "I will review your proposed settlement changes with my client and respond in due course. Your unilateral and unrealistic

deadlines are uncalled for." Defendants' Supplemental Memorandum of Law, 9/17/24, at 4. Appellants claimed Appellees' May 15 draft of the agreement constituted a new offer, which they never accepted. Appellants attached an affidavit by Dmitry and the transcript of a special deposition of Dmitry, in which Dmitry stated that the parties negotiated but never reached a binding agreement.

At a hearing on the motion, in September 2024, neither party offered any testimony. Counsel for Appellees argued that this is "a situation where the parties verbally agreed to all of the essential and material terms" of a settlement, but "when it came time to memorialize it in writing, they weren't able to do it." N.T., 9/19/24, at 8. Appellees' counsel told the court that at the courthouse cafeteria meeting, Appellees had proposed selling both companies. However, according to Appellees, the parties agreed to sell one company and revise the operating agreement for the other:

> The essence of that settlement was, at that time, in the courthouse on that Friday. I believe it's March 22nd. We're going to sell Company One. We're going to redo the operating agreement of Company Two. We're going to make an equalizing payment to Mr. Klimenko. And we're going to dismiss this lawsuit and resolve the claims between the parties. That is the essence of the settlement after -- agreed to on that Friday.

*Id.* at 9.[3]

_____

[3] Appellees' counsel later stated,

> The verbal agreement was reached around March 22nd to March 24th. What was skirted by [Appellants], and I'm happy to take the

*(Footnote Continued Next Page)*

Appellees' counsel said that the day after the cafeteria meeting, Appellants advised that they now agreed to Appellees' proposal to sell both companies:

> The following day, on a Saturday, [Appellants], through counsel, reached out and said, "[Counsel], [Appellees] wanted to sell both companies on Friday and [Appellants] didn't, but now we rethought it and we agree with you. It's cleaner. Let's sell both companies."

*Id.*[4] Appellees' counsel stated two days later, the agreement to sell both companies was confirmed. *See id.* at 43. Appellees argued,

---

> stand, because the -- Friday, at the injunction hearing, when we went downstairs, there was an agreement. Sell one company, modify the operating -- create an amended operating agreement for Company Two, so that we don't have these issues in this litigation of people stealing money and enriching themselves and their family, okay? That was agreed to.

N.T. at 42-43.

[4] Appellees counsel stated,

> Saturday, [Appellants' counsel] emails me and says, "[Appellees' counsel], can we get on a call?" I respond, "yes." We got on a call that afternoon. I want to take the stand and testify. And I want defense counsel to testify as well under oath with me about the discussion that occurred there because what happened was, that is when counsel for [Appellants] communicated to me the offer of we want to do your deal now. We agree. It's cleaner. Sell both companies. I said, "okay, great. I'll communicate it to my client."
>
> I believe on Monday that was confirmed verbally, yeah, let's do the deal. Everywhere in the documents -- so, in my term sheet, the first writing memorializing that March settlement was in -- was in my term sheet which had the sale of both companies. [Appellants'] term sheet, Your Honor, mimics that, okay?

N.T. at 43.

> That modification to the verbal agreement was accepted. And that, at that point in time, what was formed was an enforceable, legally binding settlement on all essential and material terms, which is memorialized in these writings that came later.

*Id.* at 9.

Appellees argued that thereafter, the parties exchanged term sheets that differed only on non-essential terms. Appellees contended that Appellants then refused to settle, due to "the classic situation of a buyer's remorse." *Id.* at 10. Appellees alleged that Appellants initially agreed to settle because the court had appointed a receiver, which stopped their payments from the companies. Appellees alleged Appellants had a change of heart once the receiver authorized further compensation to Appellants, giving them more leverage to draw out the litigation.[5] Appellees argued Appellants "slow-rolled, stalled, and engaged in dilatory efforts to weasel out of the settlement that they verbally agreed to at that time when the injunction hearing was concluded and when the parties met verbally." *Id.* at 11.

To support their argument that the amendments Appellants made in the April 8 redlined term sheet were non-material, Appellees highlighted the first of the redlines, which stated,

> The essence of the settlement is (i) the dismissal of all litigation; (ii) a mutual release of all asserted and unasserted claims, counterclaims, and cross-claims of any kind; and (iii) a complete unwinding and termination of all remaining legal and economic claim[s] by and among the parties and their affiliates, heirs, [and] assigns.

_____

[5] The receiver and Appellees' counsel later clarified that the receiver reduced the Denaburgs' salaries and eliminated Klimenko's salary. N.T. at 47-49.

*Id.* at 11-12. Appellees contended the other material terms that were agreed upon included (1) the sale of both companies, including how they will be sold and how the receiver will be involved; (2) an equalizing payment to Klimenko of $150,000; (3) a 50/50 split of the proceeds of the sales; and (4) the indemnification of Klimenko from any claims arising from the operation of the companies. *Id.* at 12. Appellees asserted Appellants' insertion of an April 10 deadline was not a material term. *Id.* at 13. Appellees argued that "[t]he only thing that the lawyers were still fighting over [was, 'A]re we going to reimburse attorneys fees? Is there going to be a penalty provision for noncompliance with the essential material terms?[']" *Id.* at 14.

Counsel for Appellants responded that when the parties negotiated in the courthouse cafeteria, it was with the expectation that a settlement would happen immediately so that Appellants would not have to continue paying the receiver and the litigation costs. *Id.* at 23. Counsel for Appellants acknowledged that "there was some preliminary agreement that there will be just one business sold." *Id.* at 24. Appellants argued that while they thereafter agreed to sell both companies, this agreement "came with a number of other terms which were essential to the [Appellants]." *Id.* at 26. This primarily included a stipulation that litigation would pause while the parties finalized the settlement agreement, which never happened. *Id.* at 27, 29, 30.

Appellants argued that other essential items they included in the April 8 term sheet were:

- the receiver was to pause supervision of the companies' assets;

- Klimenko and Dmitry would each receive annual compensation of $80,000, Natalie would be compensated $110,000, and Steven Denaburg would be compensated $70,000;

- the Denaburgs would continue operating and marketing the companies until their sale;

- Klimenko would receive $150,000 from the sale proceeds, with no further discovery into their financial affairs;

- the receiver would not authorize any profit distribution for the years preceding 2024;

- the continued payment to Dmitry and Steven as caretakers of Dmitry's parents;

- the continued use of the company care by Natalie;

- the parties would seek the receiver's approval for operation and marketing expenses;

- the settlement would be without admission of liability;

- the parties would agree to a non-disparagement clause;

- the parties would bear their own legal fees and costs;

- and no other material terms existed.

*Id.* at 30-37.

Appellants claimed Appellees never accepted their terms, and thus, "there was no meeting of the minds on essential terms of the settlement." *Id.* at 41; *see also id.* at 27-28, 38. Appellants also claimed that Appellees

acknowledged, in their e-mail correspondence, that no binding settlement had been reached. *Id.* at 39.

Appellees responded that they never rejected Appellants' request to pause the litigation, and faulted Appellants' counsel for failing to draft and transmit a stipulation to them before April 10. Appellees then addressed each of Appellants' alleged material terms and stated they had agreed with each and had incorporated each into their May term sheet. *Id.* at 43-45. Appellees asserted only one provision was in dispute, which was regarding attorneys' fees and a potential penalty. *Id.* at 45. However, Appellees deemed this provision not material. *Id.*

The court did not rule on the motion at the hearing. At the same hearing, the parties argued a motion for a confidentiality order, which the court expressly denied. *Id.* at 55.

Following the hearing, the court filed a civil court sheet dated the day of the hearing. The civil court sheet stated, "Plaintiff's Motion for Protective Order is Denied. Potential enforcement of Settlement agreement is denied. Trial to be had for this matter on 1/13/25-1/22/25. For more details, see transcript." Civil Court Sheet, 9/19/24, at Verdict/Remarks.

Due to the pending retirement of the judge who presided at the hearing, the case was reassigned to a different judge. The new judge, on December 12, 2024, granted Appellees' motion to enforce the settlement agreement and ordered the parties to execute Appellees' May Settlement Agreement.

Appellants moved for reconsideration, which the court denied on January 8, 2025. Appellants timely appealed on January 10.[6]

Shortly thereafter, on January 15, 2025, the court entered an order stating it "hereby submits the corrected and amended Civil Court Sheet dated September 19, 2024[.]" Order, 1/15/25. Attached to the order is a civil court sheet, dated September 19, 2024. In contrast to the original civil court sheet for that date, which stated the motion to enforce the settlement was denied, the amended sheet states, "The Court has taken Plaintiff's Motion to Enforce Settlement Agreement under advisement. For more details, see transcript." *Id.* at Ex. A.

Appellants raise the following issues:

A. Did the Trial Court err on December 12, 2024[,] by granting [Appellees'] Motion to Enforce Settlement on the merits and ordering the sale of the companies and distribution of the proceeds when the record showed that the binding contract was never formed and the parties had no meeting of the minds on essential terms of the settlement agreement[?]

B. Did the Court err on December 12, 2024[,] by *sua sponte* reversing the September 24, 2024 decision of Honorable Robert J. Mellon denying [Appellees'] Motion to Enforce Settlement and ordering jury trial to determine the ownership of the companies to take place in January 2025 and by *sua sponte* submitting on January 15, 2025, the corrected and amended Civil Court Sheet, which contradicted September 19, 2024 verdict sheet and decision

_____

[6] Appellants' notice of appeal purports to appeal from both the order granting the motion to enforce the settlement agreement and the order denying the motion for reconsideration. However, the appeal properly lies from the order granting the motion to enforce the settlement, and not the order denying reconsideration. ***See Oliver v. Irvello***, 165 A.3d 981, 983 n.1 (Pa.Super. 2017). We have amended the caption accordingly.

by the Honorable Robert J. Mellon denying [Appellees'] Motion to Enforce Settlement[?]

Appellants' Br. at 3 (trial court answers omitted).

Appellants first argue that the court erred in concluding the parties reached an oral settlement agreement. They maintain that there was no meeting of the minds on the material terms of an agreement. They argue that the oral agreement reached in March was a preliminary negotiation that required the parties to sign a final term sheet as a condition precedent to any binding agreement. *See id.* at 25 (citing *Franklin Interiors v. Wall of Fame Mgmt. Co.*, 511 A.2d 761 (Pa. 1986)). They argue they did not sign the term sheet Appellees circulated on April 6, 2024, and Appellees did not sign the counter-offer term sheet they circulated on April 8, which expired on April 10, due to the looming litigation deadlines. They contend Appellees' May 15 draft "contained yet again new terms," and went unsigned. *Id.* at 28.

They further assert the unresolved terms between the drafts were material, and not trivial. *Id.* at 26-27 (citing *Century Inn, Inc. v. Century Inn Realty, Inc.*, 516 A.2d 765, 768-69 (Pa.Super. 1986), and *Mazzella v. Koken*, 739 A.2d 531, 536-37 (Pa. 1999)). Appellants state the parties disagreed on: (1) whether Klimenko should receive profit distributions prior to 2024; (2) whether the Denaburgs were required to make disclosures regarding the operation of the companies, to prevent any suit for the distribution of profits prior to 2024; (3) whether "there should be compensation and agreement on expenses of the Denaburgs while running the companies"; (4) whether attorneys' fees should be paid by the parties or

the companies; (5) the use of the companies' names in the future; and (6) a non-disparagement provision. *Id.* Appellants argue that upholding the finding of a binding oral contract based on what they consider to have been mere preliminary negotiations would chill settlement talks. In their view, "under this reasoning, attorneys and parties can engage in preliminary discussions and then instantly be bound by one party's unilaterally proposed document without any further recourse." *Id.* at 28.[7]

Appellants further contend there is no record evidence that supports the existence of a binding oral contract. Appellants highlight that Klimenko's affidavit did not attest to his understanding of the terms of any oral agreement. They similarly contend that Denaburg's deposition testimony and the parties' e-mail correspondence directly refute that the parties entered a binding oral agreement on March 22. Appellants point out that Appellees did not offer any testimony or evidence at the hearing, and that arguments by counsel do not constitute evidence. They also contend the trial judge who heard the hearing did not make any credibility determinations.

Taking Appellants' last point first, we find that Appellants waived any claim that the trial court erred by relying on counsel's assertions and the parties' exhibits at the enforcement hearing, without taking testimony. In their pre-trial filings, both parties submitted exhibits, including e-mails, affidavits,

_____

[7] Appellants also argue the court had no jurisdiction to order non-parties Steven and Dustin Denaburg to sign the Settlement Agreement. However, Appellants fail to show how they are aggrieved by this portion of the order.

and Dmitry's deposition testimony. At the hearing, both parties' counsel also made representations to the court regarding their first-hand recollections regarding the disputed facts of the case. Appellees' counsel volunteered to take the stand, and suggested Appellants' counsel also testify. N.T. at 42. The court did not take counsel up on this offer, and instead informed him that he had two more minutes to argue. ***Id.*** at 43.

The court's actions indicated that it would decide the factual dispute based on the representations of counsel and the exhibits, and Appellants made no objection to its doing so. This argument is waived. ***See*** Pa.R.A.P. 302(a) (issues cannot be raised for the first time on appeal); ***see also Mazlo v. Kaufman***, 793 A.2d 968, 969 (Pa.Super. 2002) ("In order to preserve an issue for review, litigants must make timely and specific objections during trial"); ***Prince George Ctr., Inc. v. U.S. Gypsum Co.***, 704 A.2d 141, 145 (Pa.Super. 1997) (stating issues raised for the first time in a motion for reconsideration are waived).

Next, we consider whether the court erred in enforcing the settlement agreement. We are guided by the following standard:

> The enforceability of settlement agreements is governed by principles of contract law. To be enforceable, a settlement agreement must possess all of the elements of a valid contract. As with any contract, it is essential to the enforceability of a settlement agreement that the minds of the parties should meet upon all the terms, as well as the subject-matter, of the agreement.

* * *

- 14 -

When there exists conflicting evidence as to whether the parties intended that a particular writing would constitute a complete expression of their agreement, the parties' intent is a question to be resolved by the finder of fact. We will not reverse such finding unless it is unsupported by the evidence, or unless the fact finder has clearly abused its discretion or committed an error of law. . . .

If all of the material terms of a bargain are agreed upon, the settlement agreement will be enforced. If, however, there exist ambiguities and undetermined matters which render a settlement agreement impossible to understand and enforce, such an agreement must be set aside.

*In re Estate of Tomcik*, 286 A.3d 748, 760-61 (Pa.Super. 2022) (citation omitted).

"An agreement to make and execute a certain written agreement, the terms of which are mutually understood and agreed on, is in all respects as valid and obligatory as the written contract itself would be if executed." *Trowbridge v. McCaigue*, 992 A.2d 199, 202 (Pa.Super. 2010) (citation omitted). Thus, an oral settlement agreement may be legally binding, even where the parties intend to reduce it to writing. *See In re Estate of Tomcik*, 286 A.3d at 761; *see also id.* at 762 ("If the parties agree on essential terms and intend them to be mutually binding, a contract is formed even though the parties intend to adopt a formal document later which will include additional terms") (quoting and adopting orphan's court opinion). Such an agreement need not include every necessary term, "so long as the parties agree on the essential terms." *Toppy v. Passage Bio, Inc.*, 285 A.3d 672, 682 (Pa.Super. 2022). "Where an essential term is missing or not clearly expressed, 'the court may infer the parties' intent from other evidence and impose a term consistent

with it.'" ***Nicholas v. Hofmann***, 158 A.3d 675, 694 (Pa.Super. 2017) (citation omitted).

Here, the court clearly credited Appellees' position that the parties had orally agreed to the majority of the settlement terms, including, essentially, that Appellants would end the litigation; the parties would sell both companies; Klimenko would receive the first $150,000; Klimenko and Dmitry would split the remaining proceeds 50/50; and Klimenko would be indemnified from future claims arising from the operation of the companies.[8] The court did not err in concluding this was a binding settlement agreement and enforcing it. Nor did the court err in supplying other, non-material terms to which the parties had agreed in their exchange of drafts and/or that were necessary to effectuate the parties' intent to settle.

In their second issue, Appellants argue that the court denied the motion to enforce the settlement agreement following the September 19 hearing, as was memorialized in the original civil court sheet for that date. They claim the latter judge violated the coordinate jurisdiction rule and the law of the case doctrine when he reversed that decision, granted the motion, and entered an "amended" sheet.

---

[8] The judge who granted the motion did so at the direction of the judge who presided at the hearing. Trial Court Opinion, 2/10/25, at 4. The judge who presided at the hearing relies on the transcript of the hearing. Supplemental Trial Court Opinion, 3/5/25, at 3.

- 16 -

This issue is meritless. As the court states in its opinion,[9] civil court sheets are prepared by minute clerks who perform ministerial functions. They are not signed by a judge and "have no binding legal authority." Trial Ct. Op. at 4. As the first trial judge did not announce or enter an order denying the motion to enforce, the second trial judge did not violate the law of the case doctrine by granting the motion.

Order affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 11/18/2025

---

[9] The trial court asserts it amended the amended civil court sheet to correct a patent and obvious mistake. Trial Ct. Op. at 4.